IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERT NORMAN CASTER, | ) | Civil No.: 6:14-cv-01006-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Lisa R.J. Porter
JP Law PC
5200 SW Meadows Rd., Suite 150
Lake Oswego, OR 97035

        Attorney for Plaintiff


Billy J. Williams, Acting U.S. Attorney
Janice Hebert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204


Jordan Goddard
Special Asst. U.S. Attorney
Office of the General Counsel

FINDINGS AND RECOMMENDATION – 1

Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Norman Caster brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Agency (the Agency) for an award of benefits. In the alternative, he seeks an Order remanding the action for further proceedings.

For the reasons set forth below, the Commissioner's decision should be reversed and remanded for further proceedings.

## **Procedural Background**

Plaintiff filed applications for DIB and SSI on December 13, 2007, alleging that he had been disabled since April 26, 2007. Those applications were denied initially and upon reconsideration. Following a hearing, ALJ Louis Volz issued a decision finding Plaintiff not disabled. Plaintiff's request for review by the Appeals Council was untimely and thus ALJ Volz's March 23, 2010 decision became final.

On July 28, 2010, Plaintiff filed the applications for DIB and SSI upon which this action is based. In his current applications, Plaintiff alleges he has been disabled since April 1, 2007, due to schizophrenia, anxiety, depression and a social disorder.

After his claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing. On July 19, 2012, a hearing was held before ALJ Marilyn Maurer.

FINDINGS AND RECOMMENDATION – 2

Plaintiff testified at the hearing.  At the conclusion of the hearing, ALJ Maurer determined that Plaintiff should undergo a comprehensive neuropsychological evaluation.  The ALJ then held a supplemental hearing on December 13, 2012 for the purposes of taking Vocational Expert (VE) testimony. Plaintiff did not participate in the hearing but was represented by counsel.

In a decision dated January 4, 2013, ALJ Maurer found that Plaintiff had not been disabled at any time from his alleged onset date through the date of the ALJ's decision.

On April 24, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

## Background

Plaintiff was born in 1955 and was 57 years old at the time of the ALJ's decision. He earned a GED. Plaintiff has past relevant work as a day laborer and a machine operator.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

FINDINGS AND RECOMMENDATION – 3

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

FINDINGS AND RECOMMENDATION – 4

jobs that exist in significant numbers in the national economy.  Id.

## Medical Record and Testimony

The court has carefully reviewed the medical record and testimony and the parties are familiar with both. Accordingly, the details of that evidence will be set out below only as they are relevant to the issues before the court.

## ALJ's Decision

As an initial matter and consistent with Chavez v. Bowen, 844 F.2d. 691 (9th Cir. 1988) and Acquiescence Ruling ("AR") 97-4(9) 1997 WL 742758 at *3 (S.S.A. Dec. 3, 1997), the ALJ considered whether Plaintiff had shown "changed circumstances" from the date his prior application for disability benefits was denied.  She concluded that Plaintiff had not and, therefore, had failed to rebut the presumption of continuing non-disability established by the first ALJ's decision. However, the ALJ remarked that the previous ALJ's use of terms such as "moderate" in his residual functional capacity ("RFC") determination did not provide enough specificity to allow her to correlate her RFC determination with the prior determination. She thus chose to proceed with the sequential evaluation process "to offer [her] own conclusions regarding [Plaintiff's] functional capacity and his ability to engage in past relevant and/or other work." Tr. 22.

The ALJ then found that Plaintiff last met the insured status requirements of the Act on December 31, 2012.

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 24, 2010, the earliest legal onset date.

At the second step, the ALJ determined that Plaintiff had the following severe

impairments: PTSD[1]; major depressive disorder; alcohol dependence in early, partial remission; and cannabis dependence in early, partial remission.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings. 20 C.F.R. Part 404, Subpart P. App. 1 (20 C.F.R. 404.1520(c) and 416.920(c)).

The ALJ next found that Plaintiff had the RFC required to perform a full range of work at all exertional levels with the following non-exertional limitations: "he can understand, remember and carry out simple instructions that are learnable in 30 days or less; he cannot perform teamwork assignments; he should not engage in any public contact as a part of his work tasks." Tr. 24. In making her determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were less than fully credible.

Based upon the testimony of the VE, at the fourth step of her disability assessment, the ALJ found that Plaintiff could perform his past relevant work as a day laborer. Based on that conclusion, she found that Plaintiff was not under a disability within the meaning of the Act at any time from April 1, 2007 through the date of her decision.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the

---

[1] Post-traumatic stress disorder

FINDINGS AND RECOMMENDATION – 6

burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  <u>Tackett</u>, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews</u>, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at 1039-40.

## Discussion

In his Opening Brief, Plaintiff contends that the ALJ failed to adequately support her conclusion that Plaintiff's allegations regarding his symptoms and limitations were less than wholly credible and erroneously omitted certain limitations assessed by consultative examiner Dr. Douglas Smyth, Ph.D. In his Reply, in response to Defendant's argument that he failed to overcome the presumption of continuing non-disability, Plaintiff argues that the ALJ failed to evaluate the evidence of changed circumstances under the proper legal standards.

## I.  Evaluation of Plaintiff's Credibility

Plaintiff contends that the ALJ failed to give clear and convincing reasons for finding that his allegations were not fully credible.

### A.  Applicable Standards

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir.1996); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006).

The ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96–7. An ALJ may consider such factors as a claimant's inconsistent statements concerning his symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B. Analysis**

Plaintiff testified that mental, not physical, issues interfered with his ability to work. He testified that he is forgetful and has to be reminded to do things such as household chores. In response to questions from his attorney, Plaintiff testified that his forgetfulness had increased and that's why he takes his Lexapro. He testified he has been diagnosed with PTSD, anxiety and

depression. He attends mental health sessions every week.  Plaintiff testified he thought the last time he used cannabis was in 2010 but he couldn't remember.  When asked by the ALJ why a March 2012 medical record from his treating physician, Dr. Gale Smolen, would have included a diagnosis for cannabis dependence, Plaintiff responded that he couldn't afford cannabis and had talked to Dr. Smolen about getting a prescription for it. Plaintiff testified that he hadn't used alcohol "in a long time." The ALJ presented Plaintiff with treatment notes from February 2012 that indicated a diagnosis of alcohol dependence and comments that he was avoiding significant use but had a few drinks a month. Plaintiff conceded that he did have a few drinks a month, but it was "nothing like" before he started mental health counseling. Plaintiff then testified he could not remember the last time he had alcohol.

During his neuropsychological evaluation with consultative examiner Dr. Smyth following the hearing, Plaintiff estimated that he drinks once a month and consumes 1-6 beers in a sitting. He reported that he had stopped drinking to excess in the late 1990s, which Dr. Smyth noted conflicted with records indicating alcohol abuse up until 2011. Plaintiff reported that he used marijuana twice a month and had stopped excessive marijuana use in the 1970s, which Dr. Smyth again noted as inconsistent with records citing cannabis dependence as late as 2011 and participation in substance abuse programs as late as 2007. When asked by Dr. Smyth about the inconsistency between his reports of no substance abuse beyond the 1990s and participation in a 2007 rehabilitation program, Plaintiff "vaguely acknowledged more extensive substance abuse." Tr. 396.

At the hearing, Plaintiff testified he can dress and bathe independently and can cook but does not go shopping because he doesn't like to socialize with people.  He attends group therapy

sessions for co-occurring disorders. [2] When asked by the ALJ whether anything about his mental condition had changed since the last administrative hearing, Plaintiff responded, "Just my depression." Tr. 53. When the ALJ asked about changes to his memory and ability to function with other people, Plaintiff responded that, "It's about the same." Id. Plaintiff later testified that he had experienced more problems with his memory and had increased forgetfulness, anxiety and depression. Tr. 54-55.

Because Plaintiff here produced evidence of impairments that could reasonably be expected to produce some symptoms and there was no affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's statements regarding his symptoms and limitations were not wholly credible.

In support of her credibility determination, the ALJ asserted that Plaintiff's testimony regarding his substance abuse was inconsistent with other substantial evidence of record. This was a clear and convincing reason supported by substantial evidence for discounting the credibility of Plaintiff's testimony. The ALJ correctly noted that Plaintiff's testimony regarding his drug and alcohol use was both internally inconsistent and inconsistent with the records of treatment providers. Conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir.1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination). It was appropriate for the ALJ to find Plaintiff's inconsistent statements regarding his drug and alcohol use diminished his credibility.

---

[2] The term co-occurring disorder typically indicates substance addiction in connection with a mental health issue. SSR 13-2p

The ALJ also cited Plaintiff's failure to take medications as prescribed as a reason for concluding he was not entirely credible.  The ALJ asserted that 2011 treatment notes by Dr. Gale Smolen indicated that Plaintiff  "was allowed one to two Lexapro pills per day, but he was only using two per day once weekly," and was taking his Seroquel no more than twice weekly. Tr. 25. Plaintiff argues that the ALJ misinterpreted the evidence and that Dr. Smolen's records indicated that Plaintiff was medication compliant.  I agree.

In the 2011 treatment note regarding Lexapro to which the ALJ refers, Dr. Smolen reported "Some days when he is really depressed he takes two Lexapro. It happens at least once a week." In response, Dr. Smolen increased Plaintiff's dosage to Lexapro 20mg, one and a half tabs each night before bedtime. When read accurately, it is apparent from Dr. Smolen's note that Plaintiff was occasionally taking an increased dose of Lexapro to combat his symptoms not, as the ALJ characterized, only taking two tablets once a week.

In 2010, Seroquel was prescribed for Plaintiff "as needed" for insomnia. Dr. Smolen indicated Plaintiff had stopped taking it except when he had several sleepless nights.  In February, 2011, Plaintiff was taking Seroquel once or twice a week and Dr. Smolen changed his prescription to Trazodone. In May, 2011 Plaintiff reported that taking the Trazodone "was worse than if he did not take anything at all."  Plaintiff did not want to try other sleeping agents at that time; however, the next month Plaintiff reported poor sleep. He requested and was prescribed Seroquel at an increased dosage. The remainder of Dr. Smolen's notes indicate that Plaintiff was prescribed Seroquel XR 150 mg one half to one tablet before bedtime There is no indication in Dr. Smolen's notes that Plaintiff was not compliant with his prescription and June 2012 notes from Licensed Clinical Social Worker Gary Bredeweg report that Plaintiff was medication compliant. The ALJ's assertion that Plaintiff was noncompliant with prescriptions was not

supported by the record and, therefore, was not a legally sufficient reason for finding Plaintiff less than wholly credible.

The ALJ also asserted that records from treating sources indicated that Plaintiff was able to achieve and maintain significant improvement in his mental symptoms with ongoing treatment. However, nowhere in the ALJ's decision does she cite evidence supporting this assertion. She briefly remarks that in 2012 Plaintiff requested to be reenrolled in individual therapy sessions "because he admitted that his symptoms had increased after he stopped attending therapy regularly." Tr. 25. This, however, is a mischaracterization of the evidence, which, in June of 2012 indicated that individual therapy had not recently been available to Plaintiff but that he had been attending group sessions. Tr. 337. Plaintiff reported that he had been helped by group sessions but was experiencing "significant and increasing PTSD symptoms." Id. Plaintiff requested a "higher level of treatment with the possibility of IT again given his symptom level." Id. Under the circumstances, the ALJ's assertion that Plaintiff was able to achieve and maintain "significant improvement" with ongoing treatment was not supported by the record.

Though she cited inadequate reasons for discounting Plaintiff's credibility, the ALJ also provided a legally sufficient reason for her credibility determination and her assessment was supported by substantial evidence. Under these circumstances, the credibility determination should not be set aside. See, e.g., Carmickle, 533 F.3d at 1162 (where supported by substantial evidence, ALJ's credibility determination upheld even if some reasons offered are incorrect).

## II. Evaluation of Medical Opinion

As noted above, Plaintiff contends that the ALJ erroneously omitted certain limitations assessed by consultative examiner, Dr. Douglas Smyth, Ph.D. After the first administrative

hearing, the ALJ sent Plaintiff for a comprehensive neuropsychological evaluation, to include memory testing.  On August 20, 2012, Dr. Smyth performed an evaluation that included a review of records, a clinical interview, a mental status exam and administration of several psychological tests.  Plaintiff argues that despite assigning "great weight" to Dr. Smyth's overall opinion, the ALJ failed to include or explain why she was not including in his RFC Dr. Smyth's opinion that Plaintiff would be moderately impaired in his ability to respond to supervisory figures.

## A.  Applicable Standards

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir.1995).

## B.  Analysis

The Commissioner has cited, and I have found in the record, no opinions of treating or examining doctors that contradict Dr. Smyth's assessment of Plaintiff's ability to respond appropriately to supervision.  The Commissioner argues that the term "moderate" on the form completed by Dr. Smyth is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." Tr. 357. The Commissioner argues that under this definition of moderate, the ALJ was not required to assess any functional limitations and her

RFC finding needed only to be consistent with, not identical to, Plaintiff's credibly assessed limitations.

The Commissioner's argument is unpersuasive and is, in any event, not one that was advanced by the ALJ in her decision.  As Plaintiff correctly notes, the ALJ offered no explanation for omitting a limitation to interaction with supervisors. This court is "constrained to review the reasons the ALJ asserts," Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.2003), and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision[.]" Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir.2001) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

When an ALJ fails to provide adequate reasons for rejecting medical source opinion, the opinion is credited as a matter law. Lester, 81 F.3d at 834. Remand for an award of benefits is then appropriate if the record is fully developed, and it is clear that a finding of disability would be required if the improperly rejected evidence were accepted. Smolen, 80 F.3d at 1292. At the hearing, the VE testified that an inability to work successfully with supervisors at least 20 percent of the time would prevent Plaintiff from performing his past work. The ALJ, having determined that Plaintiff could perform his past work as a day laborer, did not proceed to step five of the sequential evaluation process to determine whether Plaintiff was capable of performing other jobs that existed in significant numbers in the national economy. The ALJ's failure to either include in his assessment of Plaintiff's RFC the limitations to which Dr. Smyth opined or to provide a sufficient basis for rejecting Dr. Smyth's opinion therefore requires that this action be remanded for further proceedings, because it is not clear based on the current record whether Plaintiff would be able to perform his past relevant work or, if unable to do so, whether he would be found disabled at step five.

### III. *Res Judicata*

Plaintiff argues that the ALJ erred in evaluating the evidence of changed circumstances. He contends that his RFC changed from his prior determination, his impairments increased in severity, he was no longer in the same age category as his prior determination and substantial evidence supported his decline in functioning as a result of increased symptoms.

### A. Standards

The Social Security Act provides "[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing." 42 U.S.C. § 405(h). In Chavez, 844 F.2d at 693, the court observed that "the principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." In the Social Security context, an earlier final decision finding that a claimant is not disabled creates a presumption that the claimant continued to be able to work after that finding. E.g., Lester, 81 F.3d at 827 (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir.1985)).

In adjudicating a subsequent claim, the ALJ applies the presumption of continuing non-disability and will determine that the claimant was not disabled unless the claimant rebuts the presumption by showing "changed circumstances" with respect to the unadjudicated period, such as an increase in the severity of the claimant's impairments, the alleged existence of an impairment not considered in the previous application, or a change in the claimant's age. AR 97-4(9). Even if the presumption is rebutted the ALJ must give effect to certain findings made in the prior final decision by the ALJ, including the findings of a claimant's RFC, education, work experience or other finding required at a step in the sequential evaluation process. Id. "Adjudicators must adopt such a finding from the final decision on the prior claim in

determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding, or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." Id.

**B.  Analysis**

As noted above, Plaintiff lists several factors that he argues represented "changed circumstances" sufficient to overcome the presumption of continuing non-disability. While the Court concludes some of these factors are not supported by the record,[3] it finds Plaintiff's allegation of the existence of a new impairment and evidence in the record indicating an increase in the severity of at least some of Plaintiff's impairments are adequate to rebut the presumption.

In his 2010 applications for benefits, Plaintiff alleged the existence of a new impairment – schizophrenia. The Agency determined that Chavez did not apply to Plaintiff's subsequent application because of this new allegation. Plaintiff does state that the Agency declined to apply Chavez but neither Plaintiff nor the Commissioner argue that the new allegation constituted a "changed circumstance" that would prevent a finding of continuing non-disability. The Court acknowledges that the only reference in the record to schizophrenia is in Plaintiff's 2010 applications for benefits. The record contains no indication that Plaintiff was ever diagnosed with or treated for schizophrenia by any medical provider. Neither is there any indication in the record that Plaintiff alleged or discussed such an impairment with his medical providers. However, both case law and the Social Security Rulings appear to indicate that the *alleged* existence of an impairment that was not raised in an earlier application nonetheless serves to overcome the

---

[3] I note that Plaintiff asserts one such changed circumstance is his change in age category from the prior determination.  However, Plaintiff's birthdate in 1955 placed him in the "person of advanced age" category at both the time of the prior decision and the decision currently at issue. See 20 C.F.R. § 404.1563(e).

FINDINGS AND RECOMMENDATION – 16

presumption of continuing non-disability.  See Lester, 81 F.3d at 827-828; AR 97-4(9).

Regardless of whether a mere allegation of a new impairment without proof is sufficient to overcome the presumption, a thorough review of the record supports Plaintiff's assertion that there were changes in the severity of his impairments.  Contrary to assertions by the ALJ and the Commissioner that Plaintiff testified that there had been no significant increase in the severity of his symptoms. Tr. 27, Def. Brief at 6, Plaintiff indicated that he had experienced changes in his depression and memory. Tr. 53, 54.  Medical records and the ALJ's own RFC determination also support that there were changed circumstances affecting the issue of disability.  In the previous administrative decision, the ALJ determined that Plaintiff had the ability to interact with the public appropriately, to get along with co-workers without distractions and to respond appropriately to changes in the work setting. Tr. 71.  In the RFC set forth in the decision at issue here, the ALJ found that Plaintiff could not perform teamwork assignments and should not engage in any public contact as part of his work tasks. Tr. 24.  Accordingly, it was error for the ALJ here to find that Plaintiff had not rebutted the presumption of continuing non-disability.

Although the ALJ found that the presumption applied, she continued with the five-step evaluation process as she would have done had she correctly found that Plaintiff's changed circumstances rebutted the presumption. Even when a Plaintiff shows changed circumstances, the Chavez presumption does not prohibit the subsequent ALJ from considering new medical information and making an updated RFC determination. See Stubbs–Danielson v. Astrue, 539 F.3d 1169,1173 (9th Cir. 2008); see also, Alekseyevets v. Colvin, 524 F. App'x 341, 344 (9th Cir. 2013)(unreported). Here, it was not improper for the ALJ to consider new medical information and revise or clarify Plaintiff's RFC.

FINDINGS AND RECOMMENDATION – 17

Nevertheless, as discussed above, the ALJ erred in her evaluation of Dr. Smyth's opinion and such error was not harmless. The ALJ also did not proceed beyond step four of the sequential evaluation process, thus making it impossible for this court to determine whether Plaintiff retained the capacity to perform other work. Because it is not clear that a finding of disability would be required even if Dr. Smyth's opinion were fully credited, remand for further proceedings is appropriate. Smolen, 80 F.3d at 1292.

## Conclusion

For the reasons set out above, a Judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the Agency for further proceedings. On remand, the ALJ should reevaluate Dr. Smyth's opinion and either include or provide an adequate basis for excluding the limitations which he assessed; should determine whether Plaintiff's RFC should be altered in light of Dr. Smyth's assessment; and should then complete the sequential evaluation process as necessary to reach a disability determination.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 16, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of April, 2016.


/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 18